**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**MARYANN OVERMERE,**

        **Plaintiff,**

    v.                **1:17-CV-1327**
                        **(FJS/DJS)**
**ANTHONY J. ZALOCKI,**

         **Defendant.**

**APPEARANCES**            **OF COUNSEL**

**OFFICE OF RUSSELL A. SCHINDLER**   **RUSSELL A. SCHINDLER, ESQ.**
245 Wall Street
Kingston, New York 12401
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**      **RYAN L. ABEL, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  Maryann Overmere ("Plaintiff") brings this action against New York State Trooper Anthony J. Zalocki ("Defendant"), in his personal capacity, seeking compensatory damages, punitive damages, and attorney's fees for violations of her civil rights pursuant to 42 U.S.C. § 1983. *See generally* Dkt. No. 1, Compl. Although her complaint is not a model of clarity, Plaintiff appears to allege that she suffered both an unreasonable seizure and an unreasonable

search in violation of the Fourth and Fourteenth Amendments.[1] *See generally* Dkt. No. 1. Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See generally* Dkt. No. 31.

**II. BACKGROUND**

According to Defendant, on September 18, 2017, he saw Plaintiff leave a convenience store, make eye contact with him, and change her gait and body language while walking to her car. *See* Dkt. No. 31-1, Def's Stmt. Material Facts, at ¶ 9. Once Plaintiff entered her vehicle, Defendant noticed that it did not have a front license plate attached to it. *See id.* at ¶¶ 11, 12. Defendant proceeded to pull her over for this offense. *See id.* at ¶ 14.

As Plaintiff's vehicle slowed to a stop, Defendant noticed that she gained height in her driver's seat, as if she were standing. *See id.* at ¶ 17. He also saw that one of her shoulders dropped, as if she was reaching down into her pants. *See id.* Defendant testified in his deposition that, when he got to Plaintiff's car, he observed her to have a loosened cloth belt, the button of her pants was undone, her zipper was partially undone, and the waistband of her pants was down to approximately the mid-region of her pubic area. *See* Dkt. No. 37, Def's Deposition, at 20:21-25.

At that point, Defendant asked Plaintiff to step out of the vehicle and he noticed that there were strands of Chore Boy in the folds of the driver's seat fabric. *See id.* at 23:3-8. According to Defendant, Chore Boy is a metal scrubbing utensil that is used by people who

---

[1] Plaintiff's complaint is drafted in a confusing manner, but she specifically notes, "That, even if the initial detention of Plaintiff for the traffic infraction was lawful, the further detention of Plaintiff for the strip search constituted an excessive detention and unreasonable search in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution." *See* Dkt. No. 1 at ¶ 12. She also complains that "the strip search and the excessive detention" caused her to suffer loss of liberty and other damages. *See id.* at ¶ 13.

smoke crack cocaine. *See id.* at 23:18-24:8. Defendant did not seize the Chore Boy, but he made a "mental note" of it at the time. *See id.* at 24:21-22.

After Plaintiff stepped out of her car, Defendant handcuffed her and placed her in his police car. Defendant drove Plaintiff to the State Police barracks in Kingston, New York ("S.P. Kingston"), and directed a female State Trooper to strip search her. *See* Dkt. No. 31-1 at ¶¶ 26-29. At no time did Defendant apply for a search warrant, nor did he use the trained drug-sniffing dog in his police car to search Plaintiff. *See* Dkt. No. 34, Pl's Decl., at ¶ 26. The strip search did not uncover any evidence of criminality; and Defendant immediately transported Plaintiff back to her vehicle, where he issued her a traffic ticket for not having a front license plate. *See id.* at ¶ 29; *see also* Dkt. No. 31-1 at ¶¶ 34, 36.

Not surprisingly, Plaintiff's version of her encounter with Defendant on September 18, 2017, is quite different. She contends that, upon leaving the convenience store, she did not change her gait or body language when walking to the car. *See* Dkt. No. 34 at ¶ 9. In fact, Plaintiff notes that Defendant has presented two different versions of Plaintiff's pre-traffic stop behavior. *See* Dkt. No. 34-5, Pl's Memorandum in Opposition, at 2. In one version, Plaintiff rounds the corner and sees Defendant in his marked police vehicle, at which time her gait changes. *See id.*; *see also* Dkt. No. 31-5, Def's Decl., at ¶ 10. In another version, Plaintiff had her back to Defendant while she had a "conversation or altercation" with two men; and, when Plaintiff turned to leave, she saw Defendant and her shoulders went up, her hands went in front of her chest, and her body language changed. *See* Dkt. No. 34-5 at 2; *see also* Dkt. No. 37 at 13:9-20.

Plaintiff further argues that she did not put her hand, or anything else, in her shorts. *See* Dkt. No. 34 at ¶ 10. Plaintiff claims, instead, that her shorts were a little loose; and she used

both hands to adjust them upward after they slid slightly down. *See id.* Plaintiff further contends that her shorts were not opened, her zipper was not undone, and her shorts, although not secured by a belt, were not down around her pelvic area. *See id.* at ¶¶ 14-15. Plaintiff additionally asserts that, in the police report, Defendant did not indicate that her pants were unbuttoned or unzipped. *See* Dkt. No. 34-5 at 3 (citing Dkt. No. 34-3, Ex. B).

Plaintiff also claims that Defendant did not find any drugs, drug paraphernalia, or other indicia of drug use in the vehicle. *See* Dkt. No. 34 at ¶ 20. Finally, she asserts that she does not know what a "Chore Boy" is, nor how drug abusers would use it, and she did not notice any metallic fibers in the folds of the vehicle. *See id.* at ¶ 21.

### III. DISCUSSION

#### A. Legal standards governing a motion for summary judgment

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under this Rule, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all reasonable inferences, in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

#### B. Factual disputes surrounding Plaintiff's seizure and the resulting strip search

The parties dispute whether Plaintiff was arrested or stopped pursuant to an investigatory detention. The Fourth Amendment right against unreasonable searches and seizures applies to both. "Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed

'arrests' or 'investigatory detentions.'" *Dunaway v. New York*, 442 U.S. 200, 214-15 (1979) (quoting [*Davis v. Mississippi*, 394 U.S. 721,] 726-727, 89 S. Ct., at 1397 [1969]).

An arrest, whether formal or not, requires probable cause. *See generally Dunaway*, 442 U.S. at 209, 212. "The application of the Fourth Amendment's requirement of probable cause does not depend on whether an intrusion of [a certain] magnitude is termed an 'arrest' under state law." *Id.* at 212. The Supreme Court has held that it does not matter if the suspect is told she is under arrest, whether she was "booked," or whether she would have an arrest record. *See id.* If she is taken in a police car, transported to a police station, and detained there for a period of time, then the seizure is only "reasonable" if based on probable cause. *See generally id.* at 212-13.

The Supreme Court has also held that, to determine whether an officer had probable cause to arrest, "'we examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003) (quotation omitted)). Furthermore, "[b]ecause probable cause 'deals with probabilities and depends on the totality of the circumstances,' … it is a 'fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules,' … It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' …" *Wesby*, 138 S. Ct. at 586 (internal quotations omitted).

Finally, in the context of strip searches, "[t]he Fourth Amendment requires an individualized 'reasonable suspicion that [a misdemeanor] arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee,

- 5 -

and/or the circumstances of the arrest' before she may be lawfully subjected to a strip search." *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (quoting *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986)) (citing *N.G. v. Connecticut*, 382 F.3d 225, 232 (2d Cir. 2004)). "'A reasonable suspicion of wrongdoing is something stronger than a mere hunch, but something weaker than probable cause.'" *Id.* (quoting *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997) (internal quotation marks and citations omitted)). "'To establish reasonable suspicion, [officers] must point to specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience. The standard requires individualized suspicion, specifically directed to the person who is targeted for the strip search.'" *Id.* (quoting [*Varrone*, 123 F.3d at 79] (internal quotation marks and citations omitted)). Thus, whether a police officer had either probable cause to arrest or reasonable suspicion to strip search, both depend on the facts and circumstances surrounding Defendant at the time of the arrest and/or search.

Here, as described above, the parties dispute, among other things, whether Plaintiff changed her gait, if she reached in her pants, if her pants were unbuttoned or unzipped, and if Defendant found a Chore Boy in the car. The resolution of these factual disputes will determine whether Defendant had probable cause to arrest Plaintiff and reasonable suspicion to order her strip search. However, at the summary judgment stage, "'[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" *Parker v. Fantasia*, No. 16-CV-4265 (KMK), 2019 WL 6498317, *7 (S.D.N.Y. Dec. 3, 2019) (quoting *Brod*, 654 F.3d at 164 (quotation marks omitted)). Therefore, the Court denies Defendant's motion for summary judgment.

### C. Qualified immunity

Whether Defendant is entitled to qualified immunity depends on the resolution of the same factual disputes. Thus, the Court finds that those genuine issues of fact preclude it from granting Defendant's motion for summary judgment based on the doctrine of qualified immunity. *See Stoley v. VanBramer*, __ F.3d __, 2019 WL 6765762, *4 (2d Cir. Dec. 12, 2019) (stating that "the familiar standards that govern resolution of motions for summary judgment apply equally to such motions based on an assertion of qualified immunity" (citation omitted)).

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment with regard to the propriety of Plaintiff's search and seizure, *see* Dkt. No. 31, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for summary judgment based on the defense of qualified immunity, *see* Dkt. No. 31, is **DENIED**; and the Court further

**ORDERS** that the trial of this action shall commence at **10:00 AM** on **July 6, 2020**, in **Albany, New York**. At a later date, the Court will issue a separate Final Pretrial Scheduling Order, setting forth the deadlines for filing pretrial submissions, including motions *in limine.*

**IT IS SO ORDERED.**

Dated: December 19, 2019
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge